IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

DOUGLAS BROOKS,
    Plaintiff,

v.

AM RESORTS, LLC,
    Defendant.

CIVIL ACTION
NO. 11-995

July _3, 2013                                                                                                                                     Anita B. Brody, J.

## MEMORANDUM

Plaintiff Douglas Brooks brings suit against Defendant AM Resorts, LLC ("AM Resorts"). Brooks alleges that AM Resorts gained unauthorized accessed to his computer and email account in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*, and the Pennsylvania counterpart to the SCA, 18 Pa. Cons. Stat. Ann. § 5741, *et seq.* I exercise jurisdiction over Brooks' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Brooks' state law claim pursuant to 28 U.S.C. § 1367. The parties have filed cross-motions for summary judgment. Brooks has filed a motion for partial summary judgment on the issue of liability, arguing that AM Resorts is indisputably liable on the claims brought against it and that trial should be set solely on the issue of damages. AM Resorts has filed a motion for summary judgment in its favor on all claims. For the reasons set forth below, I will deny Brooks' motion for partial summary judgment. Additionally, I will deny AM Resorts' motion for summary judgment on the Stored Communications Act claim and the Pennsylvania counterpart to the Stored Communications Act claim. I will grant AM Resorts' motion for summary judgment on the Computer Fraud and Abuse Act claim.

1

# I. BACKGROUND[1]

Plaintiff Douglas Brooks is a former employee of Defendant AM Resorts. On March 4, 2010, AM Resorts terminated Brooks' employment with the company. After he was fired, Brooks engaged in an email exchange with his lawyers to discuss attorney-client privileged matters pertaining to the termination (the "privileged email exchange"). Neither Brooks nor his attorneys shared this privileged email exchange with any third party. However, on March 21, 2010, Brooks received an email from his former supervisor at AM Resorts, Javier Estelrich, that stated, "Doug, I got your email. Tomorrow our lawyers will get in touch either with your lawyer or with you (in case it is not possible with them)." Pl.'s Ex. 5 at 3. Attached to Estelrich's email was the privileged email exchange between Brooks and his lawyers.

The header to Estelrich's March 21, 2010 email to Brooks listed the Internet Protocol ("IP") address 207.204.53.55. This same IP address, 207.204.53.55, appeared in the header of an email Estelrich received on March 10, 2010 from AM Resorts employee, Pepe Morell. Brooks had a Microsoft Hotmail email account. A log from the Microsoft Corporation lists the dates and times that any user accessed, or attempted to access, Brooks' personal email account in the month of March 2010. This log indicates that someone with the IP address 207.204.53.55 accessed Brooks email account on March 19, 2010 at 10:53 p.m. and on March 20, 2010 at 5:43 a.m.

During his employment with AM Resorts, Brooks had given his personal email address and password to AM Resorts because he had experienced difficulty accessing and using his work email account. Additionally, Brooks had allowed Am Resorts to install a program called TeamViewer on his personal desktop computer. TeamViewer is a program designed to allow

---
[1] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

technicians to diagnose problems on a user computer from a remote location. TeamViewer enables an individual to remotely access and control a computer. Brooks alleges that AM Resorts remotely accessed his computer after his termination through the TeamViewer program and accessed his personal email account, either independently of accessing his computer or, while it was remotely controlling his computer through TeamViewer. Brooks does not know how to access his computer remotely through TeamViewer. There is evidence that someone accessed Brooks' computer via TeamViewer on four separate occasions after his termination.

The parties have presented dueling forensic expert reports. All experts agree that IP addresses can be static or dynamic. Static IP addresses are assigned by the Internet Service Provider ("ISP") to an individual or company for a certain period of time. Dynamic IP addresses can change at any time because they are not assigned by the ISP to an individual or company for any certain period of time. All experts agree that it is unknown whether IP address 207.204.53.55 is a static or dynamic address. Brooks' expert, Brian Harris, concludes that Pepe Morell, an employee of AM Resorts, accessed Brooks' email account. This conclusion is based, to a large extent, on the fact that Morell sent an email from the IP address 207.204.53.55 to Estelrich on March 10, 2010 and that same IP address appeared in the header of the March 21, 2010 email sent from Estelrich to Brooks, which contained the privileged email exchanged between Brooks and his lawyers. Additionally, Harris concludes that AM Resorts accessed Brooks' desktop computer through TeamViewer, a program that it installed on Brooks' computer. AM Resorts' experts, Jerry Saperstein and Louis Cinquanto, conclude that there is not enough evidence to link AM Resorts to the IP address 207.204.53.55 because it is unknown whether the IP address is dynamic or static, the parties never subpoenaed the internet service provider to obtain the name of the person or company that was issued the IP address on a specific

date and time, and that IP address may have been used by many people at the same time making it impossible to determine the identity of the person who accessed Brooks' email account. Additionally, AM Resorts' experts conclude that there is insufficient evidence to link any TeamViewer access of Brooks' computer to AM Resorts. Thus, the parties' experts reach opposing conclusions.

After Brooks received the March 21, 2010 email from Estelrich that contained the privileged email exchange between Brooks and his attorneys, Brooks contacted local law enforcement and the Office of Homeland Security to report that his private email account had been accessed by AM Resorts without his authorization. On February 9, 2011, Brooks filed this Complaint against AM Resorts. There is no evidence in the record that Brooks incurred any expenses related to AM Resorts alleged unauthorized access of his computer prior to the filing of the Complaint. In October 201l, Brooks retained Brian Harris as forensic expert. Harris examined Brooks' computer and server, and a forensic copy of Estelrich's hard drive. Harris focused his investigation on whether the allegations in Brooks' Complaint could be substantiated, and extensively discussed the Complaint in the expert report he produced. There is no evidence that Harris spent any time investigating, or responding to, damage to Brooks' computer that occurred as a result of AM Resorts unauthorized access. Harris sent the following invoices to the attorney representing Brooks' in this litigation:

| Invoice Date | Description | Amount |
| --- | --- | --- |
| 9/30/12 | 9/11 Prepare declaration | $750.00 |
| 11/30/12 | Forensic Labor (hours) 11/16 – produced IP addresses | $500.00 |
| 11/30/12 | Forensic Labor (hours) Write report | $2,500.00 |
| 1/31/13 | Forensic Labor (hours)1/2 - Sent additional TeamView logs to opposing counsel | $250.00 |
| 1/31/13 | Forensic Labor (hours) 1/29 – Deutchman deposition prep call with attorney | $375.00 |

| 1/31/13 | Forensic Labor (hours) 1/31 – Harris deposition prep call with attorney | $375.00 |
| 1/31/13 | Forensic Labor (hours) – 2/1 – Harris deposition | $1,400.00 |
| 1/31/13 | Gas, Tolls, Parking – 2/1 Harris deposition | $75.00 |
| 2/28/13 | Forensic Labor (hours) 2/18 – Looking at TV logs, research calls; TC with TV (Germany); 2/28 reviewing TV records | $1,000.00 |

The total amount of these invoices is $7,225.00.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Brooks moves for summary judgment in his favor on the issue of AM Resorts' liability, arguing that the evidence indisputably establishes that AM Resorts accessed his computer and email account in violation of the SCA, 18 U.S.C. § 2701, *et seq.*, the CFAA, 18 U.S.C. § 1030, *et seq.*, and the Pennsylvania counterpart to the SCA, 18 Pa. Cons. Stat. Ann. § 5741, *et seq.*[2] AM

---

[2] Additionally, Brooks argues that summary judgment should be granted in his favor based on AM Resorts' spoliation of evidence. "Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another party's use as evidence in pending or reasonably foreseeable litigation." *Freeman v. Dep't of Corr.*, No. 07-2191, 2011 WL 94422, at *1 (M.D. Pa. Jan. 11, 2011).

On May 15, 2011, AM Resorts produced Estelrich for deposition, flying him from Mexico to Philadelphia. During the deposition, Estelrich stated that the laptop he had brought with him to the deposition contained the privileged email exchange between Brooks and his lawyers that Estelrich had attached to the email he sent to Brooks on March 21, 2010. Brooks' attorney requested that Estelrich provide to AM Resorts' counsel a copy of the laptop's hard drive before he returned to Mexico. Estelrich refused to do so. Estelrich was scheduled to return to Mexico on a 10:00 a.m. flight the next day. On May 16, 2011 at 9:18 a.m., I held an emergency telephone conference regarding the hard drive. During the conference, I verbally ordered AM Resorts' counsel to obtain a copy of the hard drive before Estelrich returned to Mexico. Later that day, in a written order, I again ordered AM Resorts to duplicate the hard drive before Estelrich departed for Mexico, and prohibited any alteration of the contents of the hard drive prior to duplication. Additionally, I warned AM Resorts that failure to comply with the order might subject AM Resorts to an adverse inference at trial. *See* ECF No. 37. It is undisputed that Estelrich's hard drive was not duplicated before he returned to Mexico. Moreover, Estelrich admits to "work[ing] with the computer" after he returned to Mexico before his hard drive was duplicated. Pl.'s Ex. 15at 14:15-15:7.

"There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005). "In choosing an appropriate sanction for the spoliation of evidence, courts should select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Id.* (internal quotation marks omitted). "A sanction that has the drastic result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a last resort, to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available." *Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994) (citation omitted) (internal quotation marks omitted). In this case, Estelrich did not destroy the laptop,

Resorts moves for summary judgment in its favor on all claims, arguing that the evidence is insufficient to prove that AM Resorts accessed Brooks' computer and email address. However, as evidenced by the dueling expert reports, genuine disputes of material fact exist as to whether AM Resorts accessed Brooks' computer and email address. Therefore, I will deny Brooks' motion for partial summary judgment, and I will not grant summary judgment for AM Resorts on this basis. I will address the additional arguments that AM Resorts raises in its motion for summary judgment as to why summary judgment should be granted on Brooks' claims under the SCA and the CFAA.

### A. The Stored Communications Act

The SCA provides, in pertinent part, that whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished . . . ." 18 U.S.C. § 2701(a). Electronic storage is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* § 2510(17). The parties agree that email messages remaining on an internet service provider's server after delivery fall within the Act's definition of electronic storage. *See, e.g., Theofel v.*

---

and the hard drive was eventually copied. Moreover, the privileged email exchange between Brooks and his lawyers was recovered from Estelrich's hard drive. Therefore, it is inappropriate to grant summary judgment in Brooks' favor as a sanction for AM Resorts' spoliation of evidence. My denial of Brooks' motion for summary judgment on this basis in no way condones the actions of AM Resorts. I am very concerned by AM Resorts' flagrant disregard of my order. I invite Brooks to file a motion in limine seeking an adverse inference instruction at trial based on AM Resorts' spoliation of evidence.

*Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004); *Strategic Wealth Grp., LLC v. Canno*, No. 10-0321, 2011 WL 346592, at *3-4 (E.D. Pa. Feb. 4, 2011); *Markert v. Becker Technical Staffing, Inc.*, No. 09-5774, 2010 WL 1856057, at *6 (E.D. Pa. May 7, 2010); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008). Moreover, no one contests that emails downloaded and stored on a personal computer are not included in the Act's definition of electronic storage. *See Thompson v. Ross*, No. 10-479, 2010 WL 3896533, at *5 (W.D. Pa. Sept. 30, 2010).

According to AM Resorts, Brooks has only alleged that AM Resorts obtained a downloaded copy of the privileged email exchange that was stored on Brooks' computer. Thus, AM Resorts argues that Brooks' claim under the SCA fails as a matter of law because emails downloaded and stored on a computer are not included in the Act's definition of electronic storage. Brooks agrees with AM Resorts' interpretation of the law. However, he strongly disagrees with AM Resorts portrayal of his allegations. While it is true that Brooks alleges that AM Resorts accessed his computer, Brooks has never alleged that AM Resorts obtained a downloaded copy of the privileged email exchange from his hard drive. Rather, Brooks has maintained throughout this litigation that AM Resorts obtained the privileged email exchange by accessing his Microsoft Hotmail email account, an act that qualifies as a violation under the SCA. Brooks has presented evidence that a genuine dispute of material fact exists as to whether AM Resorts accessed his email account. Therefore, I will deny AM Resorts' motion for summary judgment on Brooks' SCA claim.

### B. The Computer Fraud and Abuse Act

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking

specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009). Although the CFAA is primarily a criminal statute, it also provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Brooks alleges that AM Resorts violated the CFAA by "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage." *Id.* § 1030(a)(5)(B). Because this is a civil action, Brooks must demonstrate that he suffered damage or loss as a result of AM Resorts' violation of the CFAA. AM Resorts argues that Brooks cannot succeed on his CFAA claim because he has not put forth any evidence to support that he has suffered either damage or loss. Brooks argues that he has established evidence of loss.

In a civil action for violation of the CFAA, the plaintiff must demonstrate that the violator caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I). The CFAA defines the term "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). "Numerous district court decisions in the Third Circuit have held that to fall within this definition of 'loss,' the 'alleged "loss" must be related to the impairment or damage to a computer or computer system.'" *Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (quoting *Fontana v. Corry*, No. 10-1685, 2011 WL 4473285, at *7 (W.D. Pa. Aug.30, 2011)). "A compensable 'loss'

under the CFAA . . . is the cost of remedial measures taken to investigate or repair the damage to the computer, or the loss is the amount of lost revenue resulting from a plaintiff's inability to utilize the computer while it was inoperable because of a defendant's misfeasance." *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. 09-2751, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011).

Brooks alleges that he suffered "loss" when he had to replace his computer while it was shipped to another location for examination. There is no evidence in the record to support this occurrence. Moreover, even if it did occur, there is no evidence to support the amount of economic loss that Brooks suffered as a result. Additionally, Brooks includes as "loss" the litigation costs associated with hiring court reporters and videographers, and obtaining deposition transcripts. However, litigation costs are not a compensable loss under the CFAA because they are not related to investigating or remedying damage to the computer. *See Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 647 (E.D. Pa. 2007); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006).

Lastly, Brooks points to the invoices that Harris, his forensic expert, sent to his attorney during this litigation. While fees paid to an expert for investigating and remedying damage to a computer may be a cognizable "loss" under the CFAA, *see, e.g., Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccarro*, No. 06-2175, 2007 WL 1847435, at *5 (W.D. Pa. June 25, 2007), fees paid to an expert to assist in litigation do not fall within the CFAA's definition of "loss." *See Mintel Int'l Group, LTD. v. Neergheen*, No. 08-3939, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010) (holding that fees paid to a computer expert to assist the plaintiff in litigation against alleged violator, but not for the purpose of assessing computer damage, were not "losses"

under the CFAA); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 812 (N.D. Ill. 2009) (same).

Brooks alleges that AM Resorts violated the CFAA in March 2010 when it accessed his computer. In February 2011, Brooks filed this Complaint, alleging *inter alia* a violation of the CFAA. In the eleven month time period between the alleged violation and the filing of the Complaint, there is no evidence that Brooks hired anyone to assess and/or remedy the damage done to his computer. Rather, it was not until October 2011, nine months after litigation began, that Brooks hired Harris to investigate his computer. Harris' deposition testimony and his expert report indicate that Harris was hired to prove that AM Resorts accessed Brooks' computer and email account. There is no evidence that Harris spent any time investigating, or responding to, damage to Brooks' computer that occurred as a result of AM Resorts unauthorized access. The invoices cover services that were performed by Harris in September 2012 through February 2013, including deposition preparation. Moreover, all invoices are addressed to Brooks' attorney in this litigation. This evidence establishes that Brooks retained Harris for assistance in his lawsuit against AM Resorts. Therefore, these invoices do not fall within the definition of "loss" under the CFAA. Moreover, even if some of the services Harris performed could arguably fall within the definition of "loss" under the CFAA, these services do not meet the minimum loss requirement of $5,000.00. While the total amount billed by Harris was $7,225.00, more than $3,000.00 of that amount was paid to Harris for time spent on depositions, declarations, and forwarding documents to opposing counsel, all of which are litigation expenses that are not considered "loss" under the CFAA. I will grant AM Resorts' motion for summary judgment on Brooks' CFAA claim because he has not demonstrated that he suffered the requisite "loss" under the CFAA.

## IV. CONCLUSION

For the reasons set forth above, I will deny Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability, and I will deny in part and grant in part the Motion for Summary Judgment of Defendant AM Resorts, LLC. I will deny AM Resorts' motion for summary judgment on Brooks' claims under the Stored Communications Act and the Pennsylvania counterpart to the Stored Communications Act. I will grant AM Resorts' motion for summary judgment on Brooks' claim under the Computer Fraud and Abuse Act.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:  Copies **MAILED** on _____ to: